Duvall vs. Parker.

CASE 3—PETITION EQUITY—DECEMBER 9.

## Duvall vs. Parker.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. Where a vendor, and those under whom he claims, have been in possession of land for more than thirty years, the mere fact that he had not perfected the legal title in himself at the time he stipulated to convey to his vendee, is no ground for rescinding the contract, there being no allegation or proof of fraud, unfairness, or injurious negligence, or the remotest probability of ultimate loss, or insecurity for want of title.

2. Equity may refuse a vendor a specific execution, on doubts as to his title which would be insufficient to justify a rescission at the instance of the vendee, especially when he is in the undisturbed possession.

3. Where, in such case, the vendee has apprehensions as to the title, he should bring before the court all persons from whom he apprehends danger; and if he fails to do so, his vendor may make those apparently holding the legal title parties, and have their claims determined.

L. Hord, for appellant, cited 6 *J. J. M.*, 620; 7 *B. Mon.*, 97.

A. Duvall, on same side, cited 7 *Mon.*, 659; 4 *J. J. M.*, 200; 3 *Litt.*, 361; 3 *Mon.*, 309; 7 *B. Mon.*, 96.

T. N. Lindsey and J. L. Scott for appellee.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

In the year 1858, J. A. Poindexter bought from the appellee, Wyatt Parker, a tract of about 1,035 acres of land in Franklin county, Kentucky, consisting of three smaller tracts, called and known as "the Wickliffe tract," "the Haggin tract," and "the Blanton tract," all of which had, several

years before, been sold to Poindexter by the appellant, E. B. Duvall, for the sum of $9,000, of which $5,697 15 remained due at the date of the executory contract between Poindexter and Parker. The land seems to have been chiefly valuable for its timber, much of which had been consumed by Poindexter, and $6,000 worth of which was afterwards converted into lumber by Parker and delivered to Poindexter as a partial payment of the consideration of $12,500 which he had agreed to pay in lumber, leaving a balance of $5,703 74 due to Poindexter, when, in the year 1860, he left Kentucky insolvent. To relieve himself from the embarrassing condition in which he was thus left, Parker sought, and, with Poindexter's written consent, on the 4th of February, 1861, effected a new written contract with Duvall, whereby Parker assumed the debt due from Poindexter, paid $2,700 thereof, by the conveyance to Duvall of another tract of 160 acres of land, and agreed to pay him the residue in lumber—and Duvall, on his part, undertook to convey to Parker a legal title to the tract of 1,035 acres in eight months.

On the 9th of January, 1862, having, in the meantime, delivered all the lumber due to Duvall, Parker demanded a conveyance which Duvall could not then execute, because his own legal title had not been perfected. On the next day Parker brought this suit for a *rescission* of the contract, alleging, as the only cause for rescission, that Duvall had not a good legal title. He made no call for an exhibition of title, nor suggestion of any specific objection to its validity, nor intimated any desire or even willingness to have a specific execution, even if a good title could be procured.

Duvall, relying chiefly on an adverse possession of more than thirty years, and the non-existence or non-assertion of any conflicting claim, insisted that his title was sufficient—and also exhibited three conveyances made to him shortly after the institution of this suit—one from Blanton " for the Blanton tract"—another from Philip Swigert, as commissioner, for " the Haggin tract "—the other from the executors of Robert Wickliffe, for " the Wickliffe tract." But, after

elaborate preparation, the circuit judge decreed a rescission of the contract, from which Duvall appealed.

The appellee strove to prove some conflicting claims, and to disprove the continued possession as asserted by the appellant. But in this effort he has failed to show sufficient ground for the rescission of the contract. Alleged claims of title in *Newberry* and *Wight* to inconsiderable portions of the 1,035 are not satisfactorily established. No documentary title in either of them has been exhibited, or in any way proved; nor do their claims, if existing, appear either superior or conflicting. The surveyor's report and other testimony conduce to prove that, as described, they do not interfere with the land sold by the appellant. The only approach to proof of any conflict with the tract of 1,035 acres, is the fact that one *Hall* occupies a fraction too small, if his title be best, to justify any other relief than compensation. And there is no apparent or scarcely any possible danger of disturbance he.e.- after under any other claim. *Wickliffe* claimed under *Parberry's heirs*, for whom he had, as their attorney, recovered most of the land more than fifty years ago. How he derived his title from them has not been shown. But, although there is some little discrepancy in the testimony as to the character and duration of his possession, yet there is a decided preponderance in favor of the conclusion that it commenced as early as the year 1818, and had been ever since continued in his own right. There does not appear to be any danger of disturbance by Parberry's heirs, or by any person claiming under them.

Under these circumstances—there being no proof or even allegation of any fraud or unfairness, or injurious negligence, nor of the remotest probability of ultimate loss or insecurity for want of title—there seems to be no equitable ground for the decretal rescission to stand on, and this is made the more manifest by the following supplemental considerations:

1. Poindexter and the appellee for many years enjoyed, and the latter still enjoys, the possession and use of the land, without any disturbance or question whatever.

2. Great profit to the occupants and much deterioration to the land, impossible to estimate satisfactorily, have resulted from the conversion of timber, which was the chief·element of value when the appellant sold the land.

3. The appellee, after all his efforts, has been unable to find any person who will sue him for any portion of the land, or even make any claim to it.

4. The contract between the appellant and appellee refers specifically, and by defined boundaries, to the Wickliffe, the Haggin, and the Blanton tracts, as constituting the land sold, and, consequently, indicates Wickliffe, Haggin, and Blanton as the holders of the legal title and sources of the appellant's equity. And, moreover, the appellee himself lived very near all this land for several years before he bought it from Poindexter, who had occupied it for sixteen years. These facts authorize the presumption, that, at the date of the contract of 1861, the appellee knew as much about the condition of the title as he does now, or as the appellant ever knew, and that the appellant, in that contract, acted not only generously, but in perfect good faith.

In such a case, thus characterized, we can see no semblance of cause for a compulsive rescission, or ground for a suit for any other purpose than a perfection of the title, and a specific execution, if perfected. And if the appellee wants the title, and has serious apprehension of any conflicting title, he could not come gracefully into a court of equity, nor, in good faith, ask an immediate and unconditional recission, without any effort to secure the title, or manifestation of a desire to abide by his contract.

Equity might refuse to a vendor a specific execution on doubts as to his title, which would be insufficient to justify a rescission on the application ·of a vendee, and, especially, when he is in the undisturbed possession. Such a vendee should always seek a specific execution if a good title can be procured in reasonable time, and ask for a rescission only when such title is ascertained to be unobtainable. All he has a right to demand is repose and ultimate security, according to the intent and spirit of his contract.

The appellee's petition, therefore, is inequitable on its face, and his proof does not help it.

The only possible danger of defect of title which we can see is too remote for a rescission, and may arise from the failure to show any documentary title in Wickliffe, or conclusively that his occupancy for more than thirty years was in his own right, and, also, from the doubtfulness of the power of his executors to convey his title—we see in his will power to sell land, but have not seen any express power to convey land sold by their testator. These doubts and difficulties, as well as any others, may be removed without any disturbance of the appellee's possession and beneficial use, or prejudice to any of his rights. And all this would probably have been accomplished before the decree for rescission, and with less expense of time and money, had the appellee desired, in good faith, nothing but a good title, and had tried to get it. And not doubting that it may yet be done, we will, for that purpose, allow the appellee time to bring before the court all persons whose conflicting claims he may be afraid of. And we also allow to the appellant time to make Parberry's heirs and Wickliffe's executors and devisees defendants, if the appellee shall choose not to do so.

Such a procedure will secure justice to all concerned.

Wherefore, the judgment of the circuit court is reversed, and the cause remanded for further proceedings consistent with the foregoing opinion.